UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FRANCISCO SALINAS,                              :
                                                :
                Petitioner,                      :       **MEMORANDUM & ORDER**
                                                :
        v.                                    :       07 Civ. 3420 (LBS)
                                                :
DALE ARTUS,                                     :
                                                :
                Respondent.                      :
------------------------------------------------------------------x

SAND, J.

      Petitioner Francisco Salinas was convicted after a non-jury trial in the New York Supreme Court, New York County on August 15, 2002, of Murder in the Second Degree, P.L. § 125.25[1]. Petitioner was sentenced to a term of twenty two years to life in prison. The Appellate Division affirmed the conviction and the New York Court of Appeals denied leave to appeal. People v. Salinas, 24 A.D.3d 217 (1st Dept. 2005), lv. denied, 6 N.Y.3d 852 (2006). Petitioner brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). For the reasons stated below, this petition is denied.

I.

      Petitioner and the victim, Mary Ann King, were involved in a relationship that began in the early 1980s.[1] In the mid-1980s, as their relationship began to deteriorate, petitioner harassed King in numerous ways. He sent threatening letters, broke one of her windows, threatened to kill her and her colleagues, and sent nude photographs of her to her employers. At one point, petitioner predicted that he would kill King, raise an insanity defense, be convicted only of

---

[1] Except where noted, the facts described here are taken from Petitioner and Respondent's Memoranda of Law.

1

manslaughter, and serve two years in prison. Petitioner was convicted of harassment twice and spent time in jail briefly.

Petitioner and King reunited in 1989. On October 27, 2000, petitioner became jealous and "bothered" because he had seen King exiting a blue van in front of their apartment. Petitioner became convinced that her "boyfriend" had driven her home. The next day, petitioner took some medication because he "knew" that he would hurt King. Later that day, petitioner strangled King and stabbed her 16 times.

After King was dead, petitioner called 911 and confessed that he had killed King. Police officers arrived at his apartment and arrested him. Petitioner was driven to the police precinct, placed in a holding cell, and read his Miranda warnings. About ten minutes later, petitioner fell to the ground unconscious, and was taken by ambulance to Cornell Hospital. Petitioner remained in a coma for two days, and was diagnosed as having taken an overdose of Xanax and Elavil. On October 30, after waking up from his coma and being read his Miranda warnings again, petitioner admitted to killing King because he was "bothered" that her "boyfriend" had driven her home.

Petitioner was charged with two counts of Murder in the Second Degree (intentional and depraved indifference), and was convicted on the intentional theory after a bench trial before the Honorable Jeffrey Atlas on July 26, 2002.

II.

The petition before the Court raises three grounds for relief. Petitioner first argues that the rejection of his extreme emotional disturbance defense was against the weight of the evidence. Second, petitioner argues that he was denied his choice of counsel and denied

effective assistance of counsel because the trial court denied his request to appoint a new attorney. Third, petitioner argues that his sentence is excessive.

A. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a grant of a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No 104-132, 110 Stat. 1214. The statute provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle

from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id.

B. SUFFICIENCY OF THE EVIDENCE CLAIM

It is well established that a habeas court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or … weigh conflicting testimony." Fagon v. Bara, 717 F. Supp. 976, 978 (E.D.N.Y. 1989). The federal court must "resolve all issues of credibility[] in favor of the jury's verdict." United States v. Reyes, 157 F.3d 949, 955 (2d Cir. 1998).

Petitioner argues that because he "satisfied all of the elements of the [extreme emotional disturbance] defense," the trial verdict was against the weight of the evidence. (Pet. Br. at 46). Petitioner's arguments are unmistakably factual. Petitioner presented an expert at trial who testified that the killing was caused by petitioner's emotional disturbance, and the prosecution presented an expert who testified that petitioner was malingering, and discussed the results of a series of psychological tests he administered to petitioner to support his conclusion. The jury clearly credited the testimony of the prosecution's expert over the defendant's expert. It would be inappropriate for this Court to disturb the jury's ruling on this basis.

Petitioner argues that "there was notable unanimity among court, counsel, and experts as to the central fact in this case: appellant was suffering serious psychological problems." (Pet. Br. at 36). But this unanimity is not at all clear from the record.[2] In contrast, the expert for the

---

[2] The case that petitioner relies on, People v. Liebman, 179 A.D.2d 245 (1st Dept. 1992), is inapplicable here. The court in that case noted that both the defendant and prosecution expert agreed on the extent of the defendant's mental problems. Liebman, 179 A.D.2d at 257 ("Moreover, we are presented with a situation in which the basic

4

prosecution presented credible evidence that the petitioner was actually malingering, and was exaggerating his symptoms for the purpose of appearing disturbed. (Pet. Br. at 16-19). The jury clearly found, based on that conflict in testimony, that the requirement for the statutory defense, extreme emotional disturbance, had not been established. Thus, petitioner's argument regarding the sufficiency of the evidence fails.

C. DENIAL OF PETITONER'S REQUEST FOR NEW COUNSEL

Petitioner also contends that he was denied "his choice of counsel" and "the effective assistance of counsel" because the trial court refused to substitute petitioner's counsel upon his request. First, it is necessary to distinguish between petitioner's two claims, involving "the right to counsel of choice – which is the right to a particular lawyer regardless of comparative effectiveness – [as opposed to] the right to effective counsel – which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed." United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2563 (2006).

    1. Counsel of Petitioner's Choice

The right to counsel of one's choice may entitle a defendant to new assigned counsel upon showing "good cause for a substitution." People v Medina, 44 N.Y.2d 199, 207 (1978). However, "this is far from suggesting that an indigent's request that a court assign new counsel is to be granted casually" Id. The right of an indigent defendant to the services of a court-appointed lawyer does not provide a right to appointment of successive lawyers at defendant's option. People v Sawyer, 57 N.Y.2d 12, 18-19. Most importantly, requests for substitution of

---

facts are undisputed and, in large part, the difference in psychiatric opinion was without legal relevance."). As discussed above, this was not the case in petitioner's trial.

5

counsel may not be used "merely to delay the orderly administration of justice." <u>People v. Sides</u>, 75 N.Y.2d 822, 824 (N.Y. 1990).

Petitioner claims that when he requested appointment of new counsel, the court's inquiry into his claim was insufficient. Petitioner stated in court that his reason for wanting new counsel was "ineffective counsel" and that "he doesn't represent me," but did not elaborate. However, at the time of defendant's request, he had worked with his trial counsel for a year and a half, and plaintiff made this request five weeks before the parties and the court anticipated that the trial would begin. (Resp. Br. at 29). Where a defendant requests to substitute counsel on the eve of trial and defendant has had a reasonable opportunity to retain counsel of his own choosing before that time, "it is incumbent upon the defendant to demonstrate that the requested adjournment has been necessitated by forces beyond his control and is not simply a dilatory tactic." <u>People v Arroyave</u>, 49 N.Y.2d 264, 271-272 (1980). Petitioner was given three opportunities to explain his reasons for his request, but failed to state any specifics beyond his vague "ineffective counsel" terminology. Although petitioner was not given the opportunity to speak at length, it is reasonable to assume that if he had a specific complaint, he would have articulated it. It seems more likely that petitioner's request was the result of a passing disagreement, and would have served only to delay his upcoming trial, particularly since there is no record of any conflict with his attorney after this brief incident. Accordingly, this Court will not hold that the Appellate Division's rejection of petitioner's claim was an unreasonable application of federal law.

  2. <u>Ineffective Assistance of Counsel</u>

Nothing in the record supports petitioner's claim that his counsel was ineffective. The Supreme Court set out the test for ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To prevail on a Sixth Amendment claim, petitioner must show that

counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 694, 689. A reviewing court should "assess counsel's overall performance throughout the case in order to determine whether the identified acts or omissions' overcome the presumption that counsel rendered reasonable professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 386 (1986) (internal quotation marks omitted).

Petitioner's trial counsel represented him at arraignment, on 21 pre-trial calendar calls over a year and a half, and during trial. (Resp. Br. at 24). Nothing about petitioner's trial counsel's performance indicates that he provided ineffective assistance to petitioner. Rather, it is clear from the record that petitioner received diligent legal representation during his trial. Moreover, although not determinative to this Court's inquiry, it is worth noting that the First Department Disciplinary Committee found that there was "insufficient evidence to indicate an ethical violation" on the part of petitioner's trial counsel, in two independent reviews. (See letter from Thomas Cahill, dated June 10, 2003). Thus, it cannot be said that the Appellate Division's rejection of petitioner's ineffective assistance of counsel claim was an unreasonable application of clearly established federal precedent.

D. PETITIONER'S SENTENCE

Finally, petitioner argues that his sentence was excessive because of his psychological problems and his remorse for his actions. Federal courts have held that the consideration of

7

factors to affect sentencing are purely a matter of state law and present no federal constitutional issue so long as the sentence imposed is within the statutory range. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law"); Herrera v. Artuz, 171 F. Supp. 2d 146, 151 (S.D.N.Y. 2001) ("It is well settled that when a sentence is in accord with the range established by state statutory law there is no constitutional issue presented for habeas review").

III.

For the reasons stated above, the petition for a writ of habeas corpus is DENIED. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (2000), a certificate of appealability shall not issue.

**SO ORDERED.**

Dated: December 3, 2007
New York, NY

_____
U.S.D.J.